2024 IL App (1st) 240476-U

SECOND DIVISION
May 29, 2024

No. 1-24-0476B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 10376 |
| | ) | |
| STEVEN ABOGADO, | ) | Honorable |
| | ) | Pamela J. Stratigakis, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Affirming the trial court's continued detention order, where the court properly found that continued detention was necessary to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor.

¶ 2    Defendant, Steven Abogado, appeals the trial court's order for his continued detention. The record shows that defendant was charged with failure to register as an arsonist pursuant to 725 ILCS 5/111-6(b) (West 2022), stemming from a September 5, 2023, traffic stop. Officers arrested defendant after discovering his failure to comply with his annual registration requirements since 2019.

¶ 3    Defendant apparently was initially granted pretrial release, although no orders or other documents appear in the record on appeal from these initial proceedings. Thereafter, on December 12, 2023, the State filed a petition to revoke defendant's pretrial release based on defendant being charged with a new felony or Class A misdemeanor. Specifically, the State alleged that on October 21, 2023, defendant committed the offense of aggravated discharge of a firearm by firing three gunshots into a bar in Cicero, Illinois. The State requested a revocation hearing, asserting that it would show by clear and convincing evidence that no condition or combination of conditions of release would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor.

¶ 4    The trial court held a hearing the next day, on December 13, 2023. At that hearing, the State initially explained that the current matter involved a "Class 4 failure to register as an arsonist." Defendant had a 2014 arson conviction based on an incident in which defendant burned a vehicle belonging to someone with whom he went to high school. Defendant made a post-*Miranda* admission that he was trying to "prove himself to the Kings." Defendant served three years in the Illinois Department of Corrections and was required to register as an arsonist. In 2018, defendant was convicted of misdemeanor attempted failure to register as an arsonist, which had been reduced from a felony pursuant to a plea offer. Defendant was sentenced to one year of probation.

¶ 5    The State then asserted that defendant was arrested for failure to register as an arsonist on September 5, 2023. Defendant appeared in court on October 3, 2023, but on the next court date, November 7, 2023, defendant did not appear. A warrant was issued for his arrest, which "came back [on] November 9, [2023]."

¶ 6     The State further proffered that, around 11:45 p.m., on October 21, 2023, security officers at a bar denied defendant entry. Defendant then entered a 2018 Chevrolet Trailblazer and drove by the bar. He "stopped for a brief moment outside of the bar, [and] fired multiple rounds with a handgun." One of the bullets entered the bar, went through a decoration, and stopped at the wall. Another bullet struck a parked vehicle outside of the bar. The incident was captured on video surveillance. Defendant drove off, and a witness followed defendant in their vehicle. During the pursuit, defendant pointed the firearm at that witness, but the witness could not say whether or not defendant fired a shot. Defendant then abandoned the Chevrolet and fled on foot. Officers called to the scene recovered two shell casings and defendant's cell phone from inside the vehicle. Witnesses provided a description of defendant, and a photo array was conducted with one of the eyewitnesses at the bar who positively identified defendant. Police investigation revealed that the vehicle was registered to defendant's girlfriend, and that he was driving the same vehicle on September 5, 2023, during the traffic stop which led to his failure to register as an arsonist charge. After waiving his *Miranda* rights, defendant admitted to police that he fired multiple rounds "to scare the witnesses because they did not let him in the bar." Because defendant "did this while out on" release granted by the trial court, the State asked the court to enter an order revoking defendant's pretrial release.

¶ 7     Defense counsel responded, requesting release with "whatever conditions the Court deems appropriate." Counsel asserted that the court in the aggravated discharge matter had "released [defendant] on electronic monitoring." Counsel argued that, because that aggravated discharge was "obviously much more serious than the failure to register," the court should also choose to release him "on this case." Counsel also stated that, when he was released from custody after his arrest for failure to register, defendant properly registered on September 12, 2023, and he was "now in

3

compliance" regarding his "registration status." Regarding the November 7, 2023 failure to appear, counsel explained that defendant had "motioned the case up the week before," because defendant could not be in court on the scheduled date. Counsel stated that defendant and counsel came into court on November 9, 2023, and "quashed the warrant because he wasn't intentionally missing court." The court agreed that the record indicated that the warrant was quashed and recalled on November 9, 2023.

¶ 8    In ruling, the court "acknowledge[d] counsel's argument [that] [defendant] subsequently did register with regards to the arsonist charge," but explained that defendant was charged with aggravated discharge of a firearm, which was "in direct violation of his pretrial release conditions." Accordingly, the court found "by clear and convincing evidence that no condition or combination of conditions of release would reasonably ensure that the defendant does not commit or is charged with subsequent felony offenses," and revoked defendant's pretrial release.

¶ 9    The court admonished defendant that he could appeal the order, and that in order to do so, the appeal must be filed "within 14 days of today's date." The court entered a written order that same day, ordering defendant to be "detained and remanded to the custody of the Cook County sheriff pending trial." Defendant did not file a timely notice of appeal from the December 13, 2023 order.

¶ 10    Thereafter, on February 7, 2024, defense counsel filed a petition to grant pretrial release, contending that, pursuant to 725 ILCS 5/110-6.1(i-5) (West 2022), the court "must find 'at each subsequent appearance of the defendant before the court *** that continued detention is necessary." Counsel asserted that defendant "should be released based on the nature of the charge and his social history." Specifically, counsel stated that defendant registered as an arsonist soon after his arrest, and that he was currently "up to date with registration." Counsel further stated that

defendant is a 30-year-old, lifelong Cook County resident, who was engaged, and employed as a mechanic.

¶ 11    On February 20, 2024, the court held a hearing. Initially, defense counsel explained that the parties had appeared before a different judge the week before on defendant's petition, but that, "because you previously made a decision on detention, [the other judge] didn't want to hear it."

¶ 12    Defense counsel asked the court to "reconsider your original decision to detain [defendant] for a couple of reasons." First, counsel asserted that defendant "was released on electronic monitoring on [the aggravated discharge] case. The decision by that court was not to detain him." Counsel characterized the trial court's prior decision to detain as "kind of like *** a sanction decision by the court," based on defendant "pick[ing] up a new case." Counsel again explained that defendant "got in compliance immediately" by registering soon after his arrest. Finally, counsel stated that defendant is 30 years old, that he lives with his fiancée, and that he is an "extremely involved father" to his seven- and five-year-old children. Counsel asserted that defendant's detention had been very difficult on his fiancée and children.

¶ 13    The State then reminded the court of the factual proffer regarding defendant's prior arson conviction, the instant failure to register charge, and the subsequent aggravated discharge charge. The State also explained that defendant's registration had been delinquent for a significant amount of time—"his card showed that his last registration was September 9, 2019, and he was due to register again on September 9, 2020," so defendant's registration was approximately three years out of date. The State pointed out that defendant was on pretrial release, which had been granted by the court when he "committed the aggravated discharge by shooting three shots into [a] bar in Cicero. For that reason, your Honor, we believe that in order to prevent him being charged with a subsequent felony or Class A misdemeanor that he should remain detained."

¶ 14    In ruling, the trial court commented that it "recall[ed] the hearing in this case that [defendant was] seeking to re-review at this time." The court stated that defendant was on pretrial release for the failure to register as an arsonist charge, when he "was charged with another felony, that being aggravated discharge of a firearm by shooting three shots into a bar." The court explained, "This wasn't a sanction hearing. This was a revocation of pretrial release based on his committing the offense of aggravated discharge of a firearm while being on pretrial release." Accordingly, the court concluded, "based on all the factors before the court," that defendant should remain detained "based on the aggravated nature" and "the newly committed felony while on pretrial release from this court."

¶ 15    The court subsequently entered a written order that same day, ordering "defendant to remain detained."

¶ 16    Defendant filed a notice of appeal on February 23, 2024. In that notice of appeal, defendant purported to appeal from both the December 2023 and February 2024 orders. Utilizing the form approved for Rule 604(h) appeals by defendants, defense counsel checked one box, asserting that the "court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." In the space below, counsel wrote,

> "Here, as articulated in the detention order from 12.13.23, the Court found that [defendant] poses a real and present threat to the safety of any person or persons. However, this fails for the following reasons: his underlying charge is a non-detainable class 4 failure to reg[is]ter, and he has subsequently registered, and regarding his new charge, the court in that matter found that [defendant] should in fact be released (See Order denying petition from 12.12.23). The Court further erred

6

on 2.20.24, in continuing with its order from 12.13.23, when the Court found that [defendant] committed the offense of Aggravated Discharge, when in fact he was merely charged, not convicted. In light of [defendant]'s minimal criminal history, the Court erred in finding that detention was necessary to prevent defendant from being charged with a subsequent felony or Class A misdemeanor."

¶ 17    On April 1, 2024, this court entered an order on the court's own motion, requesting that defendant explain why the portion of his appeal directed at the December 13, 2023, revocation order should not be dismissed, where he did not file a timely notice of appeal within 14 days of that order. Defendant responded, acknowledging that this court lacks jurisdiction to consider a challenge to the December 2023 order. Counsel further asserted that it was unclear whether it was possible to seek leave to file a late notice of appeal in these circumstances, but  even if counsel could do so, counsel had "carefully reviewed the record and concluded the defendant-appellant would not benefit from extending his appeal to the December 12, 2023, order. Accordingly, counsel does not intend to seek leave to file a late notice of appeal directed at the December 2023 hearing."

¶ 18    Thereafter, on May 1, 2024, defense counsel filed a notice of intent not to file a Rule 604(h) memorandum. Counsel asserted that, after reviewing the record, counsel "has concluded [that] a memorandum would not meaningfully add to [defendant]'s notice of appeal." Additionally, counsel stated that defendant requested "to withdraw the arguments in the notice of appeal that (1) the evidence was insufficient for the December 13, 2023, order, and (2) revocation was improper because the underlying offense was not detention eligible." Otherwise, defendant "elect[ed] to stand on the notice of appeal and will not file a Rule 604(h) memorandum."

¶ 19    In the State's memorandum, they ask this court to "affirm the circuit court's judgment revoking pre-trial release," arguing that the court did not abuse its discretion in determining that "the State proved by clear and convincing evidence that there were no conditions or combination of conditions that could have prevented defendant from being charged with a subsequent felony or Class A misdemeanor," pursuant to "section 110-6 of the Code, which controls the revocation of pre-trial release."

¶ 20    Initially, we note that the State's memorandum focuses almost exclusively on whether the trial court properly granted the State's petition to revoke pretrial release in its December 2023 order. As defendant conceded, however, this court lacks jurisdiction to consider that order, because the "timely filing of a notice of appeal is 'both jurisdictional and mandatory,' and appellate courts lack 'the authority to excuse the filing requirements of the supreme court rules governing appeals.' " *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 28 (quoting *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213, 217-18 (2009)).

¶ 21    Accordingly, the only issue before this court is whether the trial court properly ordered defendant's continued detention in its February 2024 order. When omitting the challenges that defendant acknowledges that this court lacks jurisdiction to review, and/or has voluntarily withdrawn, defendant's sole claim in this appeal is that this court should reverse the trial court's February 2024 continuing detention order because he has "minimal criminal history," and because the trial court wrongly found that defendant had "committed the offense of Aggravated Discharge, when in fact he was merely charged, not convicted."

¶ 22    When a defendant has been ordered to be detained pretrial, the statute imposes a continuing obligation for the court to assess whether continued detention is necessary at subsequent appearances. *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. Specifically, where, like here, a

defendant's pretrial release has been revoked, the statute provides that "At each subsequent appearance of the defendant before the court, the judge must find that continued detention under this Section is necessary to reasonably ensure the appearance of the defendant for later hearings or to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(j) (West 2022).

¶ 23    We recognize that there has been considerable disagreement among the five districts of the appellate court as to which standard of review applies to pretrial release orders. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21. However, we need not determine which standard applies in this case, as the result would be the same under any standard.

¶ 24    In this case, defendant was on pretrial release for failure to register as an arsonist when he was subsequently charged with aggravated discharge of a firearm. Despite his release being conditioned on defendant not committing any additional offenses, the State's proffer established that, after being denied entry into a bar, defendant pulled up next to the bar in his vehicle, fired multiple rounds with a handgun, and fled. Additionally, during his flight, defendant pointed his gun at one of the witnesses. In light of the gravity of defendant's new charges, and defendant's demonstrated failure to abide by the previously imposed condition requiring him to not commit any additional offenses, we find no error in the trial court's conclusion that continued detention was necessary to "prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(j) (West 2022).

¶ 25    Defendant, however, contends that the continued detention order is erroneous based on his "minimal criminal history." The record shows that defendant was convicted of arson in 2014, for a gang-related incident in which he set fire to a vehicle, and served three years in the penitentiary; and misdemeanor attempted failure to register as an arsonist in 2018, which was reduced from a

felony after a plea offer. We find this criminal history to be significant, not "minimal." And regardless, it does not undermine the trial court's finding that continued detention was necessary, where defendant had shown an apparent inability to comply with the conditions of release, by being subsequently charged with aggravated discharge of a firearm.

¶ 26 Defendant also complains that the trial court wrongly found that defendant had "committed the offense of Aggravated Discharge, when in fact he was merely charged, not convicted." Defendant takes issue with the court's language, apparently suggesting that the trial court may have misunderstood the status of his new charge. A review of the record as a whole, however, makes clear that the trial court fully understood that defendant had been charged—and not yet convicted—of the offense. Moreover, the State's proffer suggests that there is clear and convincing evidence against defendant in the aggravated discharge case, including a witness who positively identified defendant, surveillance video, the recovery of shell casings and defendant's cell phone from the vehicle belonging to defendant's girlfriend, defendant's flight from that vehicle, and defendant's inculpatory statement acknowledging responsibility for the shooting. Against this evidence, the defense did not provide a counter-proffer or otherwise dispute any aspects of the State's proffer, regarding the facts of the shooting. In these circumstances, we do not find the court's comments to suggest any error in its judgment.

¶ 27 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28 Affirmed.